GREGORY CHARLES, ESQ., BAR NO. 208583
KARI SILVA, ESQ., BAR NO. 257033
CAMPEAU GOODSELL SMITH
440 North First Street, Ste. 100
San Jose, California 95112
Telephone: 408.295.9555
Facsimile: 408.852.0233
gcharles@campeaulaw.com
ksilva@campeaulaw.com

Counsel for Coatek, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COATEK, INC.<br><br>    PLAINTIFF,<br><br>V.<br><br>ITEQ CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>    Defendants. | Case No. C 09-03514 RS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(B)(5) AND 12(B)(6)**<br><br><u>Hearing</u><br><br>Date: September 16, 2009<br>Time: 9:30 a.m.<br>Place: 208 South 1st Street.<br>      San Jose, California 95113<br>      Courtroom 4, 5th Floor |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 1

III. ARGUMENT .......................................................................................................... 4

    A. The Motion to Dismiss based upon insufficiency of service of process is moot. ................................................................................. 4

    B. Standard applicable to the Rule 12(b)(6) motion. .................................. 4

    C. Coatek's first cause of action for misappropriation of trade secrets states a claim upon which relief can be granted. ....................... 6

        1. Elements of a claim of pursuant to the California Uniform Trade Secrets Act. ............................................................. 6

        2. The complaint alleges that the List and associated customer information is a trade secret. ...................................... 6

        3. The complaint alleges that ITEQ improperly used Coatek's trade secrets. .............................................................. 7

        4. ITEQ concedes that the complaint alleges damages as a result of the defendant's misappropriation of trade secrets. ............................................................................................. 8

        5. The complaint adequately pleads causes of action pursuant to Cal. Civ. Code §§ 3426.3(c) and 3426.4. .................... 8

    D. The complaint states a cause of action for Breach of Confidential Relationship. ........................................................................ 9

    E. The complaint states a cause of action for Intentional Interference with Prospective Economic Relationships. ...................... 10

    F. The complaint states causes of action for Unfair Competition and injunctive relief. ............................................................................. 11

    G. The complaint does not seek "excessive relief." ................................ 12

IV. CONCLUSION .................................................................................................... 13

CAMPEAU GOODSELL SMITH
A Law Corporation
San Jose, California

# TABLE OF AUTHORITIES

**CASES**

American Paper & Packaging Products, Inc. v. Kirgan, (1986) 183 Cal.App.3d 1318.... 6
*Bell Atlantic Corp. v. Twombly*, 544, 127 S.Ct. 1955 (2007).............................................. 5
Bosse v. Crowell Collier and MacMillan, 565 F.2d 602 (9th Cir.1977)............................. 9
*Brockmeyer v. May*, 383 F.3d 798, 809 (9th Cir. 2004) ...................................................... 4
*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ............................................... 5
*Conley v. Gibson*, 55 U.S. 41 (1957)......................................................................... 5, 6, 12
Courtesy Temporary Service, Inc. v. Camacho, (1990) 222 Cal.App.3d 1278 ........... 6, 12
*Ethridge v. Harbor House Rest.*, 861 F.2d 1389 (9th Cir. 1988) ........................................ 8
*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002)......................................................... 1
*Hilb v. Robb*, (1995) 33 Cal. App. 4th 1812 .................................................................... 12
*Kendall v. Visa U.S.C., Inc.*, 518 F.3d 1042 (9th Cir.2008) ............................................... 6
Korea Supply Co. v. Lockheed Martin Corp., (2003) 29 Cal.4th 1134 ............................ 12
Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118 ...................... 10
Parks Sch. of Business v. Symington, 51 F.3rd 1480 (9th Cir.1995) .................................. 5
*Rickel v Schwinn* (1983) 144 Cal.App.3d 648 ................................................................. 11
Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC,
    532 F.3d 963, 970-71 (9th Cir.2008) ........................................................................... 6
San Jose Construction, Inc. v. S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528 .................. 11
*Sargent Fletcher, Inc. v. Able Corp.*, (2003)110 Cal. App. 4th 1658 (2003) ..................... 6
Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal.App.4th 842 ....................... 10
*Sparling v. Daou*, 411 F.3d 1006 (9th Cir.2005) ............................................................... 1
*Stansfield v. Starkey*, (1990) 220 Cal. App. 3d 59 ............................................................ 9
Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) .......................................................... 5
*Youst v. Longo* (1987) 43 Cal.3d 64 ................................................................................ 10

**STATUTES**

15 U.S.C. § 1 ...................................................................................................................... 5
28 U.S.C. 1332 ................................................................................................................... 8
Cal. Bus. & Pro. Code §17200 ........................................................................................ 11
Cal. Bus. & Prof. Code §17203 ....................................................................................... 11
Cal. Civ. Code § 3426.................................................................................................... 6, 8
Cal. Civ. Code § 3426.1................................................................................................. 7, 8
Cal. Civ. Code § 3426.1(d) ................................................................................................ 7
Cal. Civ. Code §3426.4...................................................................................................... 8

**RULES**

Rule 4(f) ............................................................................................................................. 4
Rule 4(f)(2)(C)(i) ............................................................................................................... 4
Rule 4(f)(2)(C)(ii) .............................................................................................................. 4
Rule 4(h)(2) ........................................................................................................................ 4
Rule 8(a) ............................................................................................................................. 5
Rule 9 ............................................................................................................................. 8, 9
Rule 9(b) ............................................................................................................................. 9
Rule 12(b)(5) ............................................................................................................. 1, 4, 13
Rule 12(b)(6) ............................................................................................................. 1, 5, 13

**Foreign Statutes**

Taiwan Code of Civil Procedure, Article 123 ................................................................... 4

## I. INTRODUCTION

This matter is before the Court on a Motion to Dismiss pursuant to Fed. R. Civ. Pro. ("Rule") 12(b)(5) and Rule 12(b)(6) by defendant ITEQ, Inc. ("ITEQ"). Although the defendant claims that Coatek, Inc ("Coatek") did not perfect, service of process in a proper manner, the concurrently filed Declaration of Gregory Charles, Esq. ("Charles Dec.") demonstrates that the Rule 12(b)(5) motion is moot.[1] Furthermore the motion to dismiss pursuant to Rule 12(b)(6) should be denied. Even if portions of the motion are granted, then Coatek should be given leave to amend. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

## II. STATEMENT OF FACTS

The complaint alleges the following facts that are considered true for the purpose of the Rule 12(b)(6) Motion. Coatek was established in 1989 and serves the printed circuit board ("PCB") industry (Com., ¶8). Coatek provides plating services and products that include rigid, thin core, prepreg, copper foil, and Masslam laminates. It also provides Diazo film, tacky pads, LPI double side pins, APF film guards HASL tape, Kapeton, and plating tape (Com., ¶9). ITEQ is a copper clad laminate maker and also serves as a provider of electronic parts (Com., ¶10).

Coatek has represented ITEQ in North America since 1998 (Com., ¶11). During the last ten years, Coatek invested substantial resources marketing ITEQ's goods and developing market share (Com., ¶12). In or about February 2001, Coatek signed contract with ITEQ to manage the Sanmina SCI account in the United States (Com., ¶13). Coatek invested a great deal of time and resources with respect to the account and even obtained Underwriters Laboratory ("UL") approval of ITEQ products (Com., ¶14). UL is an internationally recognized trademark and seal of approval demonstrating the safety and reliability of a product (Com., ¶15). After Coatek obtained UL approval, ITEQ used the certification to market its products all over the

---

[1] The Charles Dec. is only submitted in opposition to the Rule 12(b)(5) motion.

1  world (Com., ¶16).

2      Coatek also worked to develop many other customers in the United States (Com., ¶17). During this time, Coatek substantially increased, ITEQ's market share in the United States and built a substantial customer list ("List") (Com., ¶19). Coatek developed the List through its own efforts and ingenuity (Com., ¶20). Coatek did not assign any of its rights with respect to the List to ITEQ (Com., ¶21). The List has substantial economic value in that it identifies particular companies that purchase goods and services produced by ITEQ and its competitors (Com., ¶22).

    With respect to the List, Coatek also maintains sales forecasts and data regarding customer purchases (Com., ¶23). Possession of the List and associated information would provide a substantial economic benefit to any person trying to sell products and services produced by ITEQ or its competitors (Com., ¶24). Coatek maintained the secrecy of the List and utilized efforts to protect the integrity of its customer base (Com., ¶25). For example, ITEQ requested a copy of the List on March 28, 2007 (Com., ¶26). In response, Coatek conditioned release of the List on upon an agreement that ITEQ would not contact any Coatek customers (Com., ¶27). ITEQ confirmed the agreement in an email. It reads:

> From: mikelin@iteq.com.tw
> To: Quang Uong
> Cc: Derek Chang ; Dr. Wan ; michael ; judychou ; jeff liu
> Sent: Wednesday, March 28, 2007 11:05 AM
> Subject: Coatek Customers and Sub-Agent
>
> Hi Quang,
>
> Further to our discussion about arrangement of market in the States, I confirmed the following:
>
> **1. Coatek will release customer and sub-agent lists, which ITEQ will extend protection without direct contact.** For those considered in financial risk, ITEQ will conduct credit checking and approve credit limits. Coatek works on commission basis on aforementioned accounts. (Emphasis Added)
>
> 2. In order to enlarge market share, ITEQ is willing to invest on cutting facility on joint venture base with Coatek and AllenWood. In the meantime, to hire a technical service manager is also necessary to the activity. Please survey suitable candidates. ITEQ is willing to share the

cost.

3. We planned to reach sales of US$300K in 3 months. Please advise what price and support you need to achieve the goal.

Best Regards,

Mike Lin
Sales & Marketing Dept.
***************************
ITEQ Corporation
Mobile: 886 926 662 250
Tel: 886 3 4191130 Ext.3000
Fax: 886 3 4191131
Skype: mike_iteq_tw
*************************** (Com., ¶28)

Given the value and sensitive nature of the List, Coatek demanded formal confirmation of the agreement.

> From: Quang Uong
> To: mikelin@iteq.com.tw
> Sent: Saturday, March 31, 2007 7:54 AM
> Subject: RE: Coatek Customers and Sub-Agent
>
> Mike
>
> Can you send a official letter so we can put on file instead of just a email? Thanks (Com., ¶29)

ITEQ sent formal correspondence as an email attachment on April 2, 2007 (Com., ¶30). Notably, the correspondence confirms that Coatek would provide forecasts and purchase volume information and includes a covenant that "ITEQ should not contact those accounts directly without (sic) permissions of Coatek." The agreement states:

> This is to confirm the arrangement between Coatek and ITEQ regarding customers in USA:
>
> 1.    Coatek agrees to release customer list to ITEQ. It's also necessary to mention the forecast purchase volume in related period of time for purpose of review to see if the sales performance justifies the protection of customers.
>
> 2.    ITEQ should not contact those accounts directly without permissions of Coatek. (Com., ¶31)

In late May, 2009, ITEQ abruptly terminated its relationship with Coatek (Com., ¶32). At the time, Coatek was holding approximately $500,000 in ITEQ inventory (Com., ¶33). Since specific goods are often sold with other items, the inventory needs to

be constantly replaced, or it has little economic value (Com., ¶34). Thus, the inventory has little value to Coatek (Com., ¶35). ITEQ refused to take the inventory back and has demanded payment from Coatek (Com., ¶36). Since terminating its relationship with Coatek, ITEQ has used the List to solicit Coatek's customers (Com., ¶37).

### III. ARGUMENT

#### A. THE MOTION TO DISMISS BASED UPON INSUFFICIENCY OF SERVICE OF PROCESS IS MOOT.

Under Rule 4(h)(2), a foreign corporation may be served in any manner prescribed for service of process upon individuals in a foreign country set forth in Rule 4(f), except by personal delivery as provided in Rule 4(f)(2)(C)(i). In the Ninth Circuit, service by international mail is affirmatively authorized by Rule 4(f)(2)(C)(ii), which requires that service be sent by the clerk of the court, using a form of mail requiring a signed receipt. *Brockmeyer v. May*, 383 F.3d 798, 809 (9th Cir. 2004). Further, the Taiwan Code of Civil Procedure sets forth the Taiwanese procedures for effecting service in Taiwan. Article 123 states that "[e]xcept as otherwise provided, service of process will be administered by the court clerk on his/her own authority."

Here, counsel for Coatek appeared at the office of the Clerk of Court on August 18, 2009 and presented the complaint and summons to the deputy clerk. Thereafter, Counsel requested that the deputy clerk serve the summons and complaint on ITEQ via United States International Express Mail, return receipt requested, and Federal Express. Thereafter, the deputy clerk actually served the complaint and summons via these methods (Charles Dec., ¶2 & Ex. 1). The summons and complaint sent via the United States Postal Service were delivered on August 21, 2009. Further, the defendant received the summons and complaint via Federal Express on the same day. (Charles Dec., ¶3 & Ex. 2). Therefore, the Rule 12(b)(5) motion is moot.

#### B. STANDARD APPLICABLE TO THE RULE 12(B)(6) MOTION.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Business v. Symington*, 51 F.3rd 1480, 1484 (9th

Cir. 1995).  All material allegations of the complaint are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).  Over fifty years ago, the Federal Rules of Civil Procedure eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 55 U.S. 41, 47 (1957).  Now, the minimum pleading requirement is set by Rule 8(a), requiring a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

Despite these clear guidelines, the defendant relies upon *Bell Atlantic Corp. v. Twombly,* 544, 127 S.Ct. 1955 (2007) for the proposition that "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  The concerns expressed by the Supreme Court in *Twombly,* however, are not present in this case.

> Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, cf. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), but quite another to forget that proceeding to antitrust discovery can be expensive… ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint"). *Twombly,* 550 U.S. at 559.

In this context, the Supreme Court affirmed dismissal of an antitrust conspiracy complaint claiming violations of the Sherman Act, 15 U.S.C. § 1, based upon a Rule 12(b)(6) motion to dismiss because the complaint alleged parallel business conduct alone, without factual matter to suggest that an agreement was made. *Twombly*, 127 S.Ct. at 1964-66.  Further, *Twombly* is limited to anti-trust matters.  In *Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*, 532 F.3d 963, 970-71 (9th Cir.2008), the Ninth Circuit noted that the Supreme Court "retired" the "no set of facts" language from *Conley*, *supra* "at least in antitrust matters." See also *Kendall v. Visa U.S.C., Inc.*,

1   518 F.3d 1042, 1047 n. 5 (9th Cir.2008). Here, Coatek does not assert anti-trust claims

2   and does not merely allege the elements of a cause of action without appurtenant facts.

      **C. THE FIRST CAUSE OF ACTION FOR MISAPPROPRIATION OF TRADE SECRETS STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

      **1. Elements of a claim of pursuant to the California's Uniform Trade Secrets Act.**

Pursuant to the California Uniform Trade Secrets Act ("UTSA") (Cal. Civ. Code §3426, *et seq*.), "a plaintiff must allege that (1) it owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sargent Fletcher, Inc. v. Able Corp.*, (2003) 110 Cal. App. 4th 1658, 1665-66 .

      **2. The complaint alleges that the List and associate customer information are trade secrets.**

Here, the motion to dismiss completely ignores the fact that Coatek need only provide fair notice of its claim and the grounds upon which it rests. Pursuant to Cal. Civ. Code § 3426.1(d) a trade secret is defined as (a) information, (b) which is valuable because it is unknown to others, and (c) which the owner has attempted to keep secret. In this context, a customer list can qualify as a trade secret. *American Paper & Packaging Products, Inc. v. Kirgan*, (1986) 183 Cal.App.3d 1318.

In *Courtesy Temporary Service, Inc. v. Camacho*, (1990) 222 Cal.App.3d 1278, the plaintiff placed temporary employees. While all employers were potential customers, there was no way to determine which employers actually hired temporary employees. Therefore, the plaintiff's customer list had economic value. The same holds true of the List and related customer forecasts. In fact, Coatek alleges that it worked to develop customers in the United States (Com., ¶17). During this time, Coatek substantially increased, ITEQ's market share in the United States and built the List (Com., ¶19). Coatek developed the List through its own efforts and ingenuity (Com., ¶20). Coatek did not assign any of its rights with respect to the List to ITEQ (Com., ¶21). The List has substantial economic value in that it identifies particular companies that purchase

goods and services produced by ITEQ and its competitors (Com., ¶22). Coatek also developed sales forecasts and data regarding customer purchases (Com., ¶23). Possession of the List and associated information would provide a substantial economic benefit to any person trying to sell products and services produced by ITEQ or its competitors (Com., ¶24). Coatek maintained the secrecy of the List and utilized efforts to protect the integrity of its customer base (Com., ¶25).

Although these allegations clearly establish that the List and associated customer information are trade secrets, ITEQ asserts that the complaint fails to allege that Coatek provided the list to the defendant. The complaint, however, clearly enumerates the conditions upon which the List would be provided to ITEQ. This consideration notwithstanding, the complaint clearly alleges that "ITEQ has used the List to solicit Coatek's customers" (Com., ¶37). Therefore, Coatek either provided the list pursuant to aforementioned conditions and limitations or ITEQ misappropriated the list. Either way, Coatek has stated a cause of action pursuant to which relief can be granted.

### 3. The complaint alleges that ITEQ improperly used Coatek's trade secrets.

The UTSA defines "misappropriation" to include:

> [D]isclosure or use of a trade secret of a person without express or implied consent by another person who . . . used improper means to acquire knowledge of the trade secret; or at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. . . . Cal. Civ. Code § 3426.1.

As previously noted, the parties agreed that "Coatek will release customer and sub-agent lists, which ITEQ will extend protection without direct contact" (Com., ¶28). Further, "ITEQ [w]hould not contact those accounts directly without permissions of Coatek" (Com., ¶31). Despite this acknowledgement and covenant, ITEQ asserts that the agreement only demonstrates a promise not to contact Coatek's customers. The defendant's tortured argument notwithstanding, Coatek specifically alleged that the List is a trade secret and "ITEQ has used the List to solicit Coatek's customers" (Com.,

¶37) and Defendant obtained valuable trade secrets without paying the fair value for the use of such information (Com., ¶37). Thus, the complaint satisfies the elements of Cal. Civ. Code § 3426.1.

### 4. ITEQ concedes that the complaint alleges damages as a result of the defendant's misappropriation of trade secrets.

In the complaint, Coatek alleges that it suffered damages in excess of $1,000,000 (Com., ¶42). Thus, it properly alleged damages as a result of the defendant's unlawful conduct. Moreover, the defendant removed this matter from state court and alleged 28 U.S.C. §1332 as a basis of jurisdiction. Notably, the removal statute is strictly construed against removal, and the burden of establishing federal jurisdiction falls to the party invoking the statute. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). Here, Paragraph 11 of the Notice of Removal plainly states, "In Paragraph 42 of the Complaint, Coatek alleges that it has suffered actual damage in an amount of not less than $1,000,000" (Doc. 1). Since the defendant's prior assertions to this court plainly contradict the instant motion, the motion should be denied.

### 5. The complaint adequately pleads causes of action pursuant to Cal. Civ. Code §§ 3426.3(c) and 3426.4.

Cal. Civ. Code § 3426.3(c) allows the recovery of exemplary damages if a defendant commits willful and malicious misappropriation of a trade secret. Further, § 3426.4 allows recovery of attorney's fees if willful and malicious misappropriation occurred. Here, the defendant makes a passing reference to Rule 9 and claims that "Coatek's failure to state how ITEQ's conduct arose to the level of willfulness and maliciousness renders Coatek's claims for punitive damages and attorneys' fees unreasonable and baseless."

In the Ninth Circuit, Rule 9(b) particularity means that the complaint must set forth "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier and MacMillan*, 565 F.2d 602, 611 (9th Cir.1977). In the instant matter, however, the standard is willful

and malicious misappropriation of trade secrets, and the defendant fails to cite a single case demonstrating that Rule 9 is applicable in these circumstances.  Further, the complaint specifically alleges that the defendant agreed that it would not contact any of Coatek's customers but is now soliciting these very companies.  This conduct alone demonstrates willful and malicious conduct.  The fact that the defendant left Coatek with $500,000 in unsellable inventory further demonstrates ITEQ's willful and malicious conduct (Com., ¶32 - 36).

### D. THE COMPLAINT STATES A CAUSE OF ACTION FOR BREACH OF CONFIDENTIAL RELATIONSHIP.

The elements of a claim for breach of a confidential relationship are "a confidential relationship, a communication made in confidence, disclosure, and injury" *Stansfield v. Starkey*, (1990) 220 Cal. App. 3d 59, 77.  Without any analysis, ITEQ merely states, "Coatek's Complaint alleges no more than an arms' length contractual relationship with ITEQ, under which Coatek purchased ITEQ's products for sale in North America and managed one U.S. account, *i.e.*, the Sanmina SCI account in the United States. *Compl*. ¶ 13. Such a relationship does not give rise to any special duties of trust" (p. 7)

The conclusory statement, however, ignores the allegations of the complaint.  It alleges that ITEQ requested a copy of the List on March 28, 2007 (Com., ¶26).  In response, Coatek conditioned release of the List on upon an agreement that ITEQ would not contact any Coatek customers (Com., ¶¶ 27-28).  Given the value and sensitive nature of the List, Coatek also demanded formal confirmation of the agreement (Com., ¶29).  On April 2, 2007, ITEQ confirmed that Coatek would provide the List, forecasts, and purchase volume information regarding its customers.  Further, ITEQ would not contact any customers without Coatek's permission (Com., ¶31).  Since agreement is an example of Coatek's efforts to protect its trade secrets, it created a confidential relationship between the parties and a duty of trust.  ITEQ breached the agreement by soliciting Coatek's customers causing damage to the plaintiff.

### E. THE COMPLAINT STATES A CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIPS.

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." *Settimo Associates v. Environ Systems, Inc*. (1993) 14 Cal.App.4th 842, 845 (internal citation omitted). "The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract. The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." *Pacific Gas & Electric Co. v. Bear Stearns & Co*. (1990) 50 Cal.3d 1118, 1126.

The elements of the cause of action are "(1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6.

Here, Coatek worked to develop many customers in the United States (Com., ¶17). During this time, Coatek (1) substantially increased market share in the United States, (2) built the List (Com., ¶19), and (3) developed sales forecasts and data regarding customer purchases (Com., ¶23). Since ITEQ requested a copy of the List on March 28, 2007 (Com., ¶26), it knew of Coatek's economic relationships with third parties.

"With respect to the third element, a plaintiff must show that the defendant engaged in an independently wrongful act. It is not necessary to prove that the


defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, 'it is sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or substantially certain to occur as a result of his action."' *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1544–1545. "The wrongfulness of such a defendant's actions is apparent from the allegations of fact, *i.e.*, that plaintiff earned a prospective advantage and defendant knowingly usurped it. No additional pleading of wrongfulness is required." *Rickel v Schwinn* (1983) 144 Cal.App.3d 648, 659.

Here, the complaint specifically alleges an agreement wherein ITEQ would maintain the confidentiality of the List and a written agreement not to contact Coatek's customers. Despite this agreement, the defendant used the List to solicit Coatek's customers. Given these considerations, the defendant certainly knew that the solicitation would disrupt prospective economic relationships.

Further, '[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' *Id*. In this context, the misappropriation of trade secrets is an independent unlawful act, and the following section of this memorandum demonstrates that the defendant's acts of unfair competition are independent unlawful acts.

### F. THE COMPLAINT STATES CAUSES OF ACTION FOR UNFAIR COMPETITION AND INJUNCTIVE RELIEF.

Cal. Bus. & Pro. Code §17200, *et seq*. prohibits unlawful, unfair, or fraudulent business practices. Injunctive relief is proper against anyone who has engaged or intends to engage in an act of unfair competition. Cal. Bus. & Prof. Code §17203. The unfair competition law "embraces anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, (2003) 29 Cal.4th 1134, 1135.

\\

Memorandum of Points and Authorities
11

1    Courts have found that unfair competition includes the improper solicitation of
2    an employer's employees and customers.  For example, an injunction is proper where an
3    individual misappropriates trade secrets (including customer lists) under the UTSA.
4    *Courtesy Temporary Service, Inc. v. Camacho, supra*, at 1291.  Even if a customer list
5    does not amount to a trade secret, its use to solicit the business is unfair competition.
6    *Id.* at 1291-1292.
7    Further, the UTSA expressly authorizes injunctive relief to stop actual or
8    threatened misappropriation. Cal. Civ. Code §3426.2.  Although injunctive relief is
9    available in circumstances of threatened misappropriation, the Complaint alleges that
10   ITEQ actually misappropriated Coatek's trade secrets and solicited the plaintiff's
11   customers.  Thus, Coatek, has properly plead a cause of action for injunctive relief.

### G. THE COMPLAINT DOES NOT SEEK "EXCESSIVE RELIEF."

Finally, the defendant asserts that "Coatek's Requests For Excessive Relief Must Be Rejected."  It then elaborates.

> In *Hilb*, the appellate court held that the trial court abused its discretion in issuing a preliminary injunction precluding defendant from using plaintiff's customer lists and other customer information.  Even assuming the customer lists and other client information in *Hilb* constituted trade secrets, the evidence did not support the conclusion that defendant misused them, so the trial court could not have properly found a likelihood of success on the part of the plaintiff. *Hilb*, 33 Cal. App. 4th at 1822. (p. 13)

The argument, however, completely ignores the status of the proceeding and simple requirements of notice pleading.  While *Hilb v. Robb*, (1995) 33 Cal. App. 4th 1812 discussed standard and evidence necessary to issue a preliminary injunction, the instant motion simply considers whether the complaint provides a short and plain statement of the claim showing that Coatek is entitled to relief.

Although the Supreme Court specifically abrogated the requirement of fact pleading more than fifty years ago, *Conley, supra,* the defendant inexplicably asserts, "Coatek has not alleged facts that show a likelihood of success at trial" *Id*.  Given these considerations, Coatek has not sought excessive relief and the motion should be denied.

## IV. CONCLUSION

For the preceding reasons, the motion to dismiss pursuant to Rule 12(b)(5) is moot. Further, the Rule 12(b)(6) motion should be denied, or alternatively Coatek should be given leave to amend.

Dated: August 25, 2009          Campeau Goodsell Smith
                                A Law Corporation


                                By:  /s/ Gregory J. Charles
                                     Gregory J. Charles
                                     Attorneys for Coatek, Inc.