MICHAEL A. SANDS (CSB NO. 178788)
msands@fenwick.com
MICHELLE CAI (CSB NO. 238838)
mcai@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

FEI-FEI CHAO, Ph.D., *pro hac vice*
feifeichao@andrewskurth.com
THOMAS R. KLINE, *pro hac vice*
thomaskline@andrewskurth.com
ANDREWS KURTH LLP
1350 I Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 662-2700
Facsimile: (202) 662-2739

Attorneys for Defendant
ITEQ CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COATEK, INC., <br><br> Plaintiff, <br><br> v. <br><br> ITEQ CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE, <br><br> Defendant. | Case No. C 09-03514 RS <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(5) AND 12(B)(6)** <br><br> Date: September 16, 2009 <br> Time: 9:30 a.m. <br> Courtroom: 4, 5th Floor <br> Judge: Magistrate Judge Seeborg |

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF INSUFFICIENT/MISSING FACTS ............................................................... 2

    (A)    Contract ................................................................................................................ 2

    (B)    Trade Secrets Misappropriation ........................................................................... 4

    (C)    Confidential Relationship .................................................................................... 5

    (D)    Intentional Interference with Actual/Potential Economic Relationships ............. 6

    (E)    Unfair Competition .............................................................................................. 7

    (F)    Entitlement to Temporary Restraining Order, Preliminary and Permanent Injunction .......................................................................................... 8

ARGUMENT .................................................................................................................................. 8

I.    COATEK APPLIES THE WRONG STANDARD OF REVIEW FOR FED. R. CIV. P. 12(b)(6) MOTIONS, SO ITS COMPLAINT MUST BE DISMISSED ............... 8

II.    COATEK'S CAUSES OF ACTION FAIL TO SHOW ENTITLEMENT TO RELIEF ............................................................................................................................ 11

    A.    Misappropriation of Trade Secrets (First Cause of Action) ............................... 11

    B.    Breach of a Confidential Relationship (Third Cause of Action) ........................ 12

    C.    Intentional Interference with Potential Economic Relationships (Fourth Cause of Action) .................................................................................... 12

    D.    Unfair Competition and Trade Practices under California Law (Fifth Cause of Action) .................................................................................................. 13

    E.    Breach of Contract (Sixth Cause of Action) ...................................................... 13

    F.    Requests for Permanent Injunction and Other Excessive Relief (Seventh Cause of Action) .................................................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................................................................. 1, 2, 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................. *passim*

*Conley v. Gibson*,
  355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ......................................................... 1, 2, 9, 14

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*,
  532 F.3d 963 (9th Cir. 2008) ................................................................................................... 9

## STATE CASES

*ABBA Rubber Co. v. Seaquist*,
  235 Cal. App. 3d 1 (Cal. App. 4th Dist. 1991) ....................................................................... 11

*Balboa Insurance Co. v. Trans Global Equities*,
  218 Cal. App. 3d 1327 (Cal. App. 3d Dist. 1990) .................................................................. 12

*Careau & Co. v. Security Pacific Business Credit, Inc.*
  222 Cal. App. 3d 1371 (Cal. App. 2d Dist. 1990) .................................................................. 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (Cal. 2003) .................................................................................................. 12

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (Cal. App. 2d Dist. 2003) ................................................................. 11

## FEDERAL STATUTES

Fed. R. Civ. P. 1 ............................................................................................................................. 1

Fed. R. Civ. P. 8 ................................................................................................................. 1, 2, 9, 11

Fed. R. Civ. P. 12(b)(5) .................................................................................................................. 1

Fed R. Civ. 12(b)(6) .................................................................................................................. 1, 9

| | |
|---|---|
| 1 | **MISCELLANEOUS** |
| 2 | Cal. Civil Code § 457 ............................................................................................................. 14 |
| 3 | Cal. Civil Code § 3426.3(c) ...................................................................................................... 5 |
| 4 | Cal. Civil Code § 3426.4 ........................................................................................................... 5 |
| 5 | Cal. Business and Profession Code § 17200 ............................................................................ 8 |
| 6 | Cal. Unfair Practice Act, Business and Profession Code § 17000 *et seq*. ............................... 8 |
| 7 | 4 Cal. Procedure (Witkin, 3d ed., 1985) Pleading § 479 ........................................................ 14 |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Defendant ITEQ Corporation ("ITEQ") submits this Reply in support of its Motion to
2   Dismiss the Complaint filed by Plaintiff COATEK Inc. ("Coatek") for failure to state a claim
3   pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

Coatek filed its Complaint in the belief that it was only required to provide the Court and ITEQ with minimal notice of its claims such that, if challenged, its complaint would "not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957). This standard no longer governs the measure of pleadings in the District Courts of the United States under the Supreme Court's dictate in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), which requires that, under Fed. R. Civ. P. 8, a complaint provide sufficient factual allegations to demonstrate its plausibility. Coatek fails to provide the specific factual averments required by Rule 8, relying, instead, on vague and conclusory allegations that do little more than parrot the legal requirements of each cause of action asserted. Most egregiously, Coatek's entire case hinges on only one factual allegation of harm which recites that "[s]ince terminating its relationship with COATEK, ITEQ has used the list to solicit COATEK's customers," (Compl. ¶ 37); the Complaint never states that such list has been provided to ITEQ and never explains what harm Coatek has suffered due to ITEQ's solicitation. Lacking factual allegations to demonstrate the plausibility of its claims, ITEQ submits, Coatek's Complaint must be dismissed.

In response to these issues, Coatek's Opposition to ITEQ's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (hereafter "Coatek's Opposition") asks that this Court ignore the heightened plausibility standard for pleading articulated by the U.S. Supreme Court in *Twombly*, 550 U.S. at 555-57, and reaffirmed in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173

---

[1] ITEQ's Motion to Dismiss also challenged the adequacy of Coatek's service of process under Fed. R. Civ. P. 12(b)(5) which Coatek simply mailed to ITEQ in Taiwan. Coatek does not defend its initial attempt to serve ITEQ but has, instead, served ITEQ anew. ITEQ acknowledges that, with this second effort, Coatek has perfected its service of process by requesting the Clerk of the Court to send the Complaint and Summons by Federal Express with return receipt requested. ITEQ, therefore, withdraws the portion of its Motion to Dismiss seeking dismissal under Fed. R. Civ. P. 12(b)(5).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS | 1 | CASE NO. C 09-03514 RS |
|---|---|---|

c

1  L. Ed. 2d 868 (2009), and to return to the "no set of facts" standard set forth more than 50 years
2  ago in *Conley*, 355 U.S. at 45-46 (*see* Coatek's Opposition at 4-6 ("*Twombly* is limited to anti-
3  trust matters")), even though this argument was expressly overruled by *Iqbal*. *See Iqbal*, 129 S.
4  Ct. at 1953 (Rule 8 "governs the pleading standard 'in all civil actions and proceedings in the
5  United States district courts'. . . . Our decision in *Twombly* expounded the pleading standard for
6  'all civil actions,' [quoting Fed. R. Civ. P. 1] . . . ."). Since Coatek's Complaint was written with
7  an improper and outdated legal standard in mind -- that is, the *Conley* standard without the
8  *Twombly* refinement -- and Coatek's Opposition argues to that standard, ITEQ submits that the
9  Opposition is entitled to no weight.

Additionally, Coatek's Opposition failed to provide any support for, or even mention, "common law misappropriation," "inducing breach of contract," and "intentional interference with actual economic relationships," causes of action raised by ITEQ. The dismissal of these claims therefore should be granted as unopposed.

For these reasons, as set forth more fully below, ITEQ submits that Coatek's Opposition should be rejected for want of merit and the Complaint must be dismissed in its entirety.

## STATEMENT OF INSUFFICIENT/MISSING FACTS

Taking the statements made in the Complaint as true for purposes of ITEQ's Motion, the facts in support of the following claims by Coatek are either completely missing or insufficient: (1) statutory misappropriation of trade secrets; (2) common law misappropriation; (3) breach of confidential relationship; (4) inducing breach of contract and intentional interference with actual/potential economic relationship; (5) statutory unfair competition & trade practices; (6) breach of express contract; and (7) temporary restraining order, preliminary and permanent injunction.[2]

**(A)** **Contract:** According to the Complaint, the only express contract Coatek claims it signed with ITEQ is one to manage the Sanmina SCI ("SANMINA") account for ITEQ

---

[2] Because Coatek's Opposition failed to support causes of action for "common law misappropriation," "inducing breach of contract," and "intentional interference with actual economic relationships," ITEQ will not further discuss deficiencies in alleging facts to support these claims. ITEQ accepts Coatek's implicit admission that it cannot defend these causes of action and reserves the right to supplement its discussion should this Court find it necessary.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS     2     CASE NO. C 09-03514 RS

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

in the United States. Compl. ¶ 13. The Complaint alleges no other contract which could have binding effect on Coatek and ITEQ. Yet, the Complaint fails to allege that ITEQ breached the Sanmina contract. Instead, in Count Six of the Complaint, Coatek claims -- apparently concerning a different alleged contract -- "pursuant to the agreement Defendant agreed that it would not contact any of Coatek's customers without the direct consent of the plaintiff." Compl. ¶ 69. However, the only facts in the Complaint that are relevant to this allegation are as follows:In an

> email from Mike Lin of ITEQ to Quang Uong of Coatek dated March 28, 2007, Mr. Lin wrote as follows:
>
> Hi Quang:
>
> Further to our discussion about arrangement of market in the States, I confirmed the following:
>
> 1. ***Coatek will release customer and sub-agent lists***, [to] which ITEQ will extend protection without direct contact. For those considered in financial risk, ITEQ will conduct credit checking and approve credit limits. Coatek works on commission basis on aforementioned accounts. ….

Compl. ¶ 28 (emphasis added).

> (b) In an attachment to an email sent by Mr. Mike Lin to Quang Uong of Coatek dated April 2, 2007, Mr. Lin stated as follows:
>
> This is to confirm the arrangement between Coatek and ITEQ regarding customers in USA:
>
> 1. ***Coatek agrees to release customer list to ITEQ.*** It's also necessary to mention the forecast purchase volume in related period of time for purpose of review ***to see if the sales performance justifies the protection of customers***.
>
> 2. ITEQ should not contact those accounts directly without permissions of Coatek.

Compl. ¶ 31 (emphasis added).

Taking these statements as true, it is still far from enough for Coatek to allege that the parties entered a binding agreement, because there is no allegation in the Complaint that Coatek, in fact, released a customer list to ITEQ for ITEQ to use in considering the extension of protection of potential customers and in furtherance of its agreement, in response to Mr. Lin's

1  request. It would not have been difficult for Coatek to insert a paragraph in the Complaint
2  showing a letter or email sent by Coatek to ITEQ at a certain date to confirm that the customer list
3  was sent to ITEQ should this event have occurred, *unless no such event took place.*[3]

4       **(B)**     <u>**Trade Secrets Misappropriation:**</u> Coatek alleges that ITEQ has misappropriated
5  Coatek's trade secrets by engaging in the following conduct:

6
      A.    "Interfering with Coatek's business;
      B.    Soliciting business ***primarily*** from Coatek's customers; and
7
      C.    Using confidential, proprietary and/or trade secret information obtained by the Defendant to assist in procuring sales from
8            ***Coatek's customers and other customers***."

9  *See* Compl. ¶ 41 (emphasis added). It is unclear what Coatek means by "procuring sales from
10 Coatek's customers ***and other customers***."[4] Coatek's Complaint, and its Opposition, fail to
11 plausibly explain how Coatek would have the right to ask ITEQ not to contact *any* of these
12 customers, if these customers are not entirely Coatek's customers, but, rather, Coatek's and/or
13 *other* manufacturers' and/or *other* distributors' customers.

14      Coatek further alleges that due to Defendant's *malicious, oppressive, fraudulent*, and
15 *despicable* conduct, Coatek is entitled to punitive damages pursuant to Civil Code § 3426.3(c)

---

[3] Coatek's Opposition argues that "[t]he complaint, however, clearly enumerates *the conditions upon which the List would be provided to ITEQ*. This consideration notwithstanding, the complaint clearly alleges that 'ITEQ has used the List [sic: "list"] to solicit Coatek's customers.'" Coatek's Opposition at 7, quoting Compl. ¶ 37 (emphasis added). Coatek's argument is flawed. There is no allegation that Coatek performed its end of the bargain. It is fundamental contract law that a conditional promise by ITEQ without the expected precedent performance by Coatek does not constitute a binding contract between the parties. Here, Coatek alleged in the Complaint that ITEQ offered *not to contact Coatek's customers, if Coatek released the list. Since Coatek has not alleged that it released the list, ITEQ has no binding contractual obligation under the agreement as pleaded.* As indicated in Paragraph 28 of the Complaint, *ITEQ requested the list in order to conduct a credit check to assess the financial risk of doing business with the customers presented by Coatek back in March 2007. See* Compl. ¶ 28. This kind of interest could not be expected to last forever. Should Coatek fail to provide the list within a reasonable time in response to ITEQ's willingness to consider providing credit protection, the offer would naturally expire. Termination of the relationship between Coatek and ITEQ occurred in May 2009, more than two years after Mr. Lin made his promise. Compl. ¶ 32. Paragraph 37 is insufficient to support Coatek's allegation that indeed a list passed to ITEQ *soon after* Mr. Lin made the offer so that the parties formed a binding contract. Should that be a fact, there is no reason for Coatek not to plead it.

[4] Coatek alleges that over the years it "built a substantial customer list ('LIST')" (Compl. ¶ 19), but also claims that the "LIST . . . identifies particular companies that purchase goods and services produced by ITEQ *and its competitors.*" Compl. ¶ 22 (emphasis added). *See* Compl. ¶ 41.C. ("COATEK's customers *and other customers*"); Compl. ¶ 44 ("COATEK's customers *and/or potential customers*") (emphasis added).

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS             4            CASE NO. C 09-03514 RS

and attorney fees pursuant to Civil Code § 3426.4. However, the Complaint provides no factual allegations concerning how and why Defendant's conduct is malicious, oppressive, fraudulent and despicable, especially since the *only* fact alleged by Coatek is that "[s]ince terminating its relationship with Coatek, ITEQ has used the list to solicit Coatek's customers." This factual allegation, taken as true, certainly -- without more -- does not amount to "malicious, oppressive, fraudulent and despicable" conduct.

Also, as indicated above, Coatek *never* alleges that it provided its customer list to ITEQ within a reasonable time after agreeing to do so. Without the list, ITEQ could not possibly misappropriate Coatek's alleged trade secrets. Assuming *arguendo*, that ITEQ has indeed received the customer list from Coatek and agreed not to contact the companies on this list, the Complaint still falls short of pleading "misappropriation of trade secrets" sufficiently. Most notably, Coatek provides *absolutely* no factual allegation in the Complaint that ITEQ knew that Coatek's list of its customers and other customers is a trade secret and should be kept confidential. Emails from Mr. Lin of ITEQ to Coatek cited in the Complaint (*see* Compl. ¶¶ 28, 31), at most stand for the proposition that ITEQ agreed not to contact companies on the list. However, *the agreement Coatek claims it had that ITEQ would not contact Coatek's customers conflicts with the notion that ITEQ also agreed to keep Coatek's list confidential, proprietary and/or a trade secret;* to avoid contacting Coatek's customers, ITEQ would have to let its employees, agents, and any other business associates know of the list so that they would not inadvertently contact Coatek's customers. If ITEQ is required to treat the list as confidential, it would not be able to fulfill its promise not to contact companies on the list.

In addition, the only allegation provided in the Complaint that is even tangentially relevant to this allegation states that "[s]ince terminating its relationship with Coatek, ITEQ has used the list to solicit Coatek's customers." Compl. ¶ 37. This barebones allegation provides no time, location, and name of the customers ITEQ supposedly solicited.

**(C)** **Confidential Relationship:** Coatek alleges that "Defendant acquired knowledge of customer information, customer lists, customer leads, bids, specifications, material lists,

business plans, marketing strategies and/or other proprietary information **in confidence** from Coatek **with the understanding that it not be disclosed to others**." Compl. ¶ 55 (emphasis added). However, the only facts alleged in the Complaint are that Coatek developed a substantial customer list and associated information. Compl. ¶¶ 19-24. The Complaint then took a quantum leap by stating that ITEQ requested the list so that it could conduct credit checks to approve credit limits for financially troubled companies, and that Coatek asked ITEQ to put the request in writing, which ITEQ did. Compl. ¶¶ 26-31. Other than the request for the customer list, the Complaint presents no allegation that (1) ITEQ has ever requested that Coatek provide any customer information, customer leads, bids, specifications, material lists, business plans, marketing strategies and/or other proprietary information to ITEQ; (2) Coatek has ever required ITEQ to treat the above information in confidence with the understanding that it not be disclosed to others; and (3) Coatek has ever provided such information to ITEQ. With respect to the customer list, the Complaint is silent on whether Coatek ever provided the list to ITEQ in confidence. The Complaint again takes a leap to the termination of the relationship by ITEQ in May 2009, and leaves the key issue of whether or not Coatek provided its customer list to ITEQ unanswered.

With respect to the relationship between the parties, the only fact alleged in the Complaint is that "Coatek signed contract with ITEQ in 2001 to manage the Sanmina SCI (SANMINA) account in the United States." Compl. ¶ 13. This fact is insufficient to establish the existence of "confidential relationship," which requires at least employer-employee, master-servant, and/or principal-agent relationship to warrant a "duty of trust."

**(D)** <u>**Intentional Interference with Actual/Potential Economic Relationships:**</u>

Coatek alleges that it "had existing and potential relationships with actual and potential customers ('Economic Relationship') containing probable future economic benefits to Coatek." Compl. ¶ 59. However, the Complaint provides no factual allegations to establish that an economic relationship actually existed between Coatek and the customers on its list. The Complaint, in fact, made clear that Coatek merely hoped to add these companies as customers, *if ITEQ would provide credit support.* Compl. ¶ 28. Coatek, acknowledging that this is the only

| DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS | 6 | CASE NO. C 09-03514 RS |

1  credible interpretation, in its Opposition jettisons claims based on actual agreements and only
2  alleges interference with Coatek's potential economic relationships, that is, with potential
3  customers. Nor does Coatek credibly allege that -- without receiving the list from Coatek -- ITEQ
4  could know about the potential economic relationship between Coatek and its possible future
5  customers or that ITEQ intentionally committed a wrongful act to disrupt, and has actually
6  disrupted, Coatek's economic relationship with its potential customers causing identifiable
7  damage to Coatek.

8  Also noticeably absent from the Fourth Cause of Action, now that it has been pared down
9  to interference with prospective economic advantage, is any allegation of conduct by ITEQ that
10 would be independently wrongful. The facts asserted in the Complaint provide that Coatek
11 sought economic protection from ITEQ by conducting credit checks and approving credit limits
12 to potential customers which present financial risk, and to invest in a joint venture with Coatek
13 and AllenWood. Compl. ¶ 28. That allegation presents a condition which is opposite to the
14 economic relationship alleged by Coatek, because a potential customer which posed a financial
15 risk to Coatek would not be likely to be economically beneficial to Coatek. The only wrongful
16 act alleged by Coatek to show that ITEQ has disrupted the economic relationship between Coatek
17 and its potential customers is that "[s]ince terminating its relationship with Coatek, ITEQ has
18 used the list to solicit Coatek's customers." Even taking this unspecific allegation as true, a mere
19 solicitation, by itself, would not disrupt the potential customer's possible economic relationship
20 with and cause damage to Coatek, as required by claiming an intentional interference with a
21 potential economic relationship.

22 **(E) <u>Unfair Competition</u>:** Coatek alleges that "Defendant is intentionally attempting
23 to divert business from Coatek's customers and prospective customers to Defendant" by
24 "utilizing Coatek's confidential information to accomplish this purpose." Compl. ¶¶ 64-65. Yet,
25 as explained above, Coatek's Opposition appears to admit that diverting business from existing
26 customers is not at issue here, because Coatek expressly admitted that this cause of action is
27 limited to only "interference with prospective customers." Coatek's Opposition at 10-11. The
28 Complaint further alleges that "Defendant's conduct is unlawful and unfair and a violation of

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS                    7                    CASE NO. C 09-03514 RS

California Business and Professions Code, § 17200 as well as the California Unfair Practice Act, Business and Professions Code § 17000 *et seq*." Compl. ¶ 66.  However, the only factual claim which could support all of these allegations is again that "[s]ince terminating its relationship with Coatek, ITEQ has used the list to solicit Coatek's customers." Compl. ¶ 37.  This allegation fails to provide the reasonable specificity required to support the unfair competition claim.  In particular, it does not specify the manner in which ITEQ's actions are alleged to be unlawful (which requires that ITEQ's practices are forbidden by law).  It also fails to support Coatek's allegation that ITEQ's conduct is unfair (which requires that ITEQ's conduct (1) offended an established public policy or was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers or (2) tethered to specific constitutional, statutory, or regulatory provisions).

**(F)** **<u>Entitlement to Temporary Restraining Order, Preliminary and Permanent Injunction:</u>**  Coatek alleges continuing injury and seeks a temporary restraining order, preliminary injunction, and permanent injunction relief from the Court. Compl. ¶¶ 45, 72-81.  However, nowhere in the Complaint can the factual allegations in support of any of the required elements for injunctive relief be found, except in the most conclusory fashion.  *Id.*

In sum, ITEQ is entitled to factual allegations sufficient to demonstrate some credible likelihood, not merely a vague possibility, that a legal claim exists so that it can formulate its defense and assess its liability.  Coatek's barebones factual allegations in the Complaint clearly have not met the "flexible plausibility standard" set forth in *Twombly*, and therefore should be dismissed.

## ARGUMENT

### I. COATEK APPLIES THE WRONG STANDARD OF REVIEW FOR FED. R. CIV. P. 12(b)(6) MOTIONS, SO ITS COMPLAINT MUST BE DISMISSED.

In its Motion to Dismiss ("Motion"), ITEQ argued "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint must 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Twombly*, 550

U.S. at 564 (citation omitted). Therefore, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

Although the matter has, by now, been soundly laid to rest by the U.S. Supreme Court, in its Opposition, Coatek argued that *Twombly* is limited to antitrust matters. *See* Coatek's Opposition at 5. Coatek made this argument based on the Ninth Circuit's analysis -- before *Iqbal* -- concerning a supposed limitation on the applicability of *Twombly*. *See e.g.*, *Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*, 532 F.3d 963, 970-71 (9th Cir. 2008) (quoting *Twombly*) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]' Nevertheless, in antitrust matters, '[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'"). Coatek's opposition is hinged upon its speculation that the *Twombly* pleading standard only applies to antitrust matters, arguing that because Coatek does not allege an antitrust violation, this Court should fall back on the "no set of facts" standard set forth in *Conley*, 355 U.S. at 47.

The Ninth Circuit's view, however, has now been answered by the U.S. Supreme Court. In its recent decision in *Iqbal*, the U.S. Supreme Court stated as follows:

> *Respondent first says that our decision in Twombly should be limited to pleadings made in the context of an antitrust dispute.* Iqbal Brief 37-38. **This argument is *not* supported by *Twombly* and is incompatible with the Federal Rules of Civil Procedure. Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of *Rule 8*.** *550 U.S., at 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929.* <u>*That Rule in turn governs the pleading standard "in all civil actions and proceedings in the United States district courts."*</u> Fed. Rule Civ. Proc. 1. Our decision in *Twombly* expounded the pleading standard for *"**all civil actions**," ibid.*, and it applies to antitrust and discrimination suits alike. See *550 U.S., at 555-556, and n. 3, 127 S. Ct. 1955, 167 L. Ed. 2d 929.*

*Iqbal*, 129 S. Ct. at 1953 (emphasis added). As shown in this excerpt, the U.S. Supreme Court clearly and explicitly mandated that the heightened pleading standard set forth in *Twombly* cannot be limited to antitrust disputes; rather, it applies to "*all civil actions*." The express statement made by the *Iqbal* Court should, therefore, put Coatek's arguments to rest, since it has not attempted to support its Complaint under the *Twombly* standard.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS | 9 | CASE NO. C 09-03514 RS |

Despite alleging seven causes of action and requesting temporary restraining order, preliminary and permanent injunctive relief, the Complaint contains only one factual allegation of harm upon which Coatek relies for its claim for relief under every single cause of action, *i.e.*, Paragraph 37 of the Complaint, which recites that "[s]ince terminating its relationship with Coatek, ITEQ has used the list to solicit Coatek's customers."  Compl. ¶ 37.  However, taking a close look at this paragraph, one would find that it fails to specify any customers ITEQ contacted and provides *no more than* an unadorned, the-defendant-unlawfully-harmed-me accusation, which could not meet the pleading requirement set forth in *Iqbal*.  *See Iqbal*, 129 S. Ct. at 1949.  For example, the word "list" in Paragraph 37 is not capitalized to denote the "LIST" which Coatek considered to be its "trade secrets."  *Compare* "the list" in Compl. ¶ 37 with "the LIST" in Compl. ¶¶ 19-27.  If "the list" discussed in Paragraph 37 denotes no more than a general list of potential customers in the printed circuit board industry, the recitation in Paragraph 37 reveals only fair competition by ITEQ in soliciting business in the U.S.  ITEQ is, after all, entitled to do business independently in the U.S.; Coatek alleges no infirmity in ITEQ's termination of the relationship with Coatek.

In the final analysis, the Complaint misses one most important factual allegation that Coatek cannot make, *i.e.*, it fails to recite that Coatek provided a confidential LIST of Coatek's customers to ITEQ after Mr. Lin of ITEQ sent a confirmation letter to Coatek on April 2, 2007, agreeing not to contact customers on the LIST.  If the LIST was *not* sent to ITEQ by Coatek in accordance with the agreement with Mr. Lin, there can be no causes of action raised by Coatek without gross speculation, as suggested by Coatek:  "Coatek either provided the list pursuant to aforementioned conditions and limitations or ITEQ misappropriated the list."  Coatek's Opposition at 7.  This is the exact reason for the *Twombly* Court to retire the "no set of facts" standard:  "when allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Twombly*, 550 U.S. at 557.  As in *Twombly*, ITEQ submits, Coatek's Complaint "without some further factual enhancement . . . stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8).  If Coatek

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS     10     CASE NO. C 09-03514 RS

1  is unable to provide a factual allegation that the LIST was indeed sent to ITEQ in confidence, on
2  a particular date, by certain delivery means, and from whom to whom, this case should be
3  dismissed with prejudice.

4  **II.  COATEK'S CAUSES OF ACTION FAIL TO SHOW ENTITLEMENT TO RELIEF.**
5

6  **A.  Misappropriation of Trade Secrets (First Cause of Action)**

7  For the reasons explained above, Coatek has not provided a reasonable explanation for
8  how its First Cause of Action plausibly alleges ITEQ's misappropriation of Coatek's trade
9  secrets. While it is true that a customer list can be a trade secret, Coatek has not alleged that it
10 provided ITEQ with *any* list, let alone with a confidential customer list. Coatek's many and
11 varied descriptions of the list it seeks to protect -- but cannot allege it provided to ITEQ -- suggest
12 it largely included possible customers to whom Coatek did not sell, but would like to do so, if
13 ITEQ would provide credit protection. Coatek cites not a single case in which a list of potential
14 customers or a mixed list of customers and potential customers qualified as a trade secret.
15 Coatek, in fact, appears to be alleging that a list of industry participants would be entitled to trade
16 secret protection even though a "trade secret" must consist of three elements: (a) information (b)
17 which is valuable because unknown to others and (c) which the owner has attempted to keep
18 secret. *See ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (Cal. App. 4th Dist. 1991).
19 Clearly, a list of industry participants cannot satisfy element (b), because it would not be
20 "unknown to others."

21 Whatever kind of list Coatek believes ITEQ has misappropriated -- and the Complaint is
22 internally contradictory and therefore far from clear on this point -- Coatek has not credibly
23 alleged that the list was a trade secret Coatek *owned* that ITEQ *acquired, disclosed or used*,
24 *through improper means*, and that ITEQ's actions damaged Coatek. *See Sargent Fletcher, Inc. v.*
25 *Able Corp.*, 110 Cal. App. 4th 1658, 1665-66 (Cal. App. 2d Dist. 2003), *citing* Cal. Civ. Code §
26 3426.1. Here, the only wrongful action alleged by Coatek is that ITEQ solicited Coatek's
27 customers on the list. Coatek does not allege any sales as a result of the solicitation. Since no
28 sales by ITEQ or profits lost by Coatek have been claimed, it remains a mystery what injury

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Coatek could have suffered for it to claim $1,000,000 in damages and how Coatek could
2  plausibly show it was injured to this extent. *Id.*

### B.  Breach of a Confidential Relationship (Third Cause of Action)

Likewise, Coatek's Opposition points to no specific allegations that it provided the list to ITEQ, if at all, pursuant to a confidential relationship. Although Coatek repeats its claims that it offered to provide a list of customers and others to ITEQ in response to ITEQ's agreement to do credit checks without contacting the companies on that list, it does not explain how this agreement would have created a confidential relationship of trust. *See Balboa Insurance Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1350-51 (Cal. App. 3d Dist. 1990) ("[t]he law of confidential relationships governs duties of trust that one is *not* obligated to assume") (emphasis added). Nor -- as noted above -- does Coatek allege that it provided the list to ITEQ in connection with that agreement. For all that appears in Coatek's allegations, ITEQ contacted industry participants and Coatek merely *assumes* that ITEQ found the names on Coatek's list of "companies that purchase goods and services produced by ITEQ and its competitors." Compl. ¶ 22. Such allegations fall far short of the *Twombly* standard, and Coatek has not argued otherwise.

### C.  Intentional Interference with Potential Economic Relationships (Fourth Cause of Action)

A claim for intentional interference with potential economic relationships, unlike one for interference with actual economic relationships, must include a plausible allegation that the conduct was not merely intentional, but also "independently wrongful." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1164-65 (Cal. 2003). Coatek's Complaint does not allege any such *wrongful acts*, making only broad-brush formulaic recitations: "intent to injure," "in order to destroy a competitor," "other unlawful conduct." Nor does the only fact provided in the Complaint support the allegation (*i.e.*, that after terminating the relationship with Coatek, ITEQ has used the list to solicit Coatek's "customers") have any plausibility because Coatek identifies no such customers and the companies on the list are at most a mixture of customers and prospective customers of Coatek. And, Coatek's Opposition defends its allegations only by

reference to pre-*Twombly* standards, thus making no showing of plausibility. As such, ITEQ submits, these allegations must fail.

### D. Unfair Competition and Trade Practices under California Law (Fifth Cause of Action)

Coatek's breach of California Unfair Competition and Trade Practices law is the most barebones and conclusory of its Complaint, even though it seeks treble damages and attorneys fees. Compl. ¶¶ 63-67. For example, Coatek alleges, without benefit of any factual specificity: "In addition to the foregoing conduct, Defendant is intentionally attempting to divert business from COATEK's customers and prospective customers to Defendant." *Id.* ¶ 64. Likewise, nowhere does Coatek cite authority supporting the drastic remedies it seeks for contacting "prospective" customers, especially when it cannot even allege that it provided a list of such prospective customers to ITEQ. Coatek has failed to demonstrate that its California Unfair Competition and Trade Practices allegations have any plausibility; from all appearances, they are rote recitations requiring, ITEQ submits, dismissal.

### E. Breach of Contract (Sixth Cause of Action)

Although ITEQ's Motion to Dismiss did not specifically address Coatek's Sixth Cause of Action alleging "Breach of Express Contract," it should be apparent from the discussion above, that Coatek's Complaint fails to allege that (1) the parties formed an agreement in 2007; (2) Coatek provided a confidential list within a reasonable time pursuant to that agreement; and (3) ITEQ breached the agreement by contacting companies on a list that Coatek provided to it pursuant to such an agreement. The Complaint can at most support the notion that ITEQ agreed to conduct credit checks on certain companies without contacting them *should Coatek provide a list*. Compl. ¶¶ 28, 31. Nor has Coatek alleged -- other than in the most conclusory fashion ("COATEK has been damaged in an amount to be proven at trial." Compl. ¶ 71) -- that it has suffered lost sales or profits as a result of ITEQ's alleged breach of contract. *See, e.g., Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (Cal. App. 2d Dist. 1990), *citing* 4 Cal. Procedure (Witkin, 3d ed. 1985) Pleading, § 479, at 515-16 and Cal. Civ. Code § 457 ("Where contractual liability depends upon the satisfaction or performance of one or

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

more conditions precedent, the allegation of such satisfaction or performance is an essential part of the cause of action."; plaintiff must allege that he "duly performed all the conditions on his part"). Absent credible allegations of contract formation, performance of precedential acts by Coatek, breach by ITEQ and damages, no breach of contract action can lie.

### F. Requests for Permanent Injunction and Other Excessive Relief (Seventh Cause of Action)

In defending its cause of action for a permanent injunction, Coatek provides no information or argument to resurrect the substantive causes of action on which Count Seven relies. Coatek's claims fail, to wit: (1) for Statutory Misappropriation of Trade Secrets, because Coatek does not allege that it provided a trade secret to ITEQ; (2) for breach of a Confidential Relationship, because Coatek does not allege that it provided its list in the context of a relationship of trust; (3) for Intentional Interference with Potential Economic Relationships, because Coatek does not allege that any actions by ITEQ were independently wrongful or that Coatek actually lost sales as a result of ITEQ conduct; (4) for Statutory Unfair Competition and Trade Practices, because its allegations are entirely general and conclusory; and (5) for Breach of Express Contract, because Coatek does not allege that it provided its list to ITEQ in the context of any contract.

With regard to all of these claims, Coatek argues that *Conley* "specifically abrogated the requirement of fact pleading." Coatek's Opposition at 12. Apparently for this reason, Coatek filed its Complaint with the most vague and conclusory allegations, and defends them now only under the obsolete *Conley* standard, without attention to the need to demonstrate the plausibility of its allegations under *Twombly*. Thus, in further support of its prayer for a permanent injunction, Coatek adds only the allegation that: "Unless restrained by this Court, the Defendant will continue to do the acts complained of herein, all to COATEK's irreparable damage in that COATEK will lose business as well as information which provides the Defendant with competitive advantage." Compl. ¶ 77. ITEQ submits that this conclusory statement, which merely recites the requirements of the law without any factual allegations to demonstrate the

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS     14     CASE NO. C 09-03514 RS

1 plausibility of the claims, was *precisely* the type of formulaic pleading that the Supreme Court
2 forbid in *Twombly* as re-affirmed in *Iqbal*.

### CONCLUSION

For the foregoing reasons, ITEQ respectfully requests that this Court grant the instant motion to dismiss all COATEK's claims with prejudice and grant such other relief as the Court may deem just and proper.

Date: September 2, 2009

ANDREWS KURTH, LLP

By: */s/ Fei-Fei Chao*
Fei-Fei Chao, Ph.D.
Thomas R. Kline
1350 I Street NW, Suite 1100
Washington, D.C. 20005

FENWICK & WEST LLP

Michael A. Sands (CSB No. 178788)
Michelle Cai (CBS No. 238838)
Silicon Valley Center
801 California Street
Mountain View, CA 94041

Attorneys for Defendant
ITEQ CORPORATION

WAS:154615.3